CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

NOV 17 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

BOBBY M. HOLBROOK,      )
)
      Plaintiff,     )   Civil Action No. 1:05cv00035
)
v.                  )   **MEMORANDUM OPINION**
)
**JO ANNE B. BARNHART,**  )  By: GLEN M. WILLIAMS
**Commissioner of Social**   )  Senior United States District Judge
**Security,**             )
)
      Defendant.

In this social security case, the court vacates the final decision of the Commissioner denying benefits and remands this case to the Commissioner for further development consistent with this opinion.

## I. Background and Standard of Review

Plaintiff, Bobby M. Holbrook, ("Holbrook"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying Holbrook's claims for a period of disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq.* (West 2003 and Supp. 2005). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Case 1:05-cv-00035-GMW-PMS  Document 13  Filed 11/17/05  Page 1 of 21  Pageid#: 58

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

Holbrook filed his current applications for DIB and SSI payments on or about October 11, 2002, alleging disability as of April 30, 2000, due to arthritis, a chemical imbalance in his brain and complaints of hearing voices. (Record, ("R.") at 79-86, 88, 250-52.) His claim was denied initially and on reconsideration. (R. at 48-50, 53, 55-57, 255-57.) Holbrook then requested a hearing before an administrative law judge, ("ALJ"). (R. at 58-59.) The ALJ held a hearing on February 24, 2004, at which Holbrook was represented.[1] (R. at 258-75.) On April 2, 2004, the ALJ issued a decision and denying Holbrook benefits. (R. at 19-36.) Holbrook then requested that the ALJ's decision be reviewed by the Appeals Council, and the Appeals Council remanded the case back to the ALJ. (R. at 71-73.) A second hearing was held on December 7, 2004, (R. at 276-91), and by decision dated February 7, 2005, the ALJ again denied Holbrook's claims for SSI and DIB benefits. (R. at 13-20.)

---

[1]Holbrook was represented by Eric Reese, a paralegal with the law firm of Browning, Lamie and Gifford. (R. at 258)

-2-

In his opinion dated February 7, 2005, the ALJ found that Holbrook met the disability insured status requirements of the Act and was insured for DIB purposes through the date of the decision. (R. at 19.) The ALJ concluded that Holbrook had not engaged in substantial gainful activity since the alleged onset of his disability. (R. at 19.) The ALJ found that Holbrook suffered from severe impairments, borderline intellect and chronic arthralgias, but the ALJ found that his impairments did not meet or medically equal one of the listed impairments found at 20 C.F.R. Part 404, Subpart P. (R. at 19.) The ALJ found that Holbrook's allegations regarding his limitations were not totally credible and that he retained the residual functional capacity to perform work at the medium[2] level of physical exertion with an intellectual endowment in the borderline range. (R. at 19.) The ALJ further determined that Holbrook was limited to activities that did not involve interaction with the public. (R. at 19.) The ALJ found that Holbrook could not perform his past relevant work. (R. at 19.) Based on Holbrook's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy which Holbrook could perform. (R. at 19-20.) Therefore, the ALJ concluded that Holbrook was not under a "disability" as defined by the Act at any time through the date of the decision. (R. at 20.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

After the ALJ issued his opinion, Holbrook pursued his administrative appeals,

---

[2]Medium work is work that involves lifting items weighing no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.927(c) (2005).

(R. at 8-9), but the Appeals Council denied his request for review. (R. at 5-7.) Holbrook then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2005). This case is before the court on the Commissioner's motion for summary judgment, filed October 3, 2005, (Docket Item No. 11), and Holbrook's motion for summary judgment, (Docket Item No. 10), filed August 29, 2005.

## II. Facts

Holbrook was born in 1969, which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c) and 416.963(c). (R. at 79.) Holbrook has a high school education and past relevant work experience in construction and factory labor. (R. at 89, 94.)

At his hearing on December 7, 2004, Holbrook testified that he last worked as a construction laborer and a brick mason, and he had not worked since the last hearing. (R. at 279.) Holbrook then testified that since the last hearing, his arthritis had been getting a little worse. (R. at 280.) He testified that the arthritis affected his knees, elbows, hands and back. (R. at 280.) Holbrook said that at times, he had trouble walking because of the pain in his ankles. (R. at 280.)

The ALJ next asked Holbrook whether or not he suffered from anxiety and depression, and Holbrook testified that he did, and he had been treated monthly by Tony Mullins at the Dickenson County Medical Health Center. (R. at 280-81.) Holbrook then said that the treatment he had received for his mental health problems

-4-

had improved his condition. The ALJ then asked Holbrook if he could perform work that required him to work with things instead of people, and Holbrook stated that he could not because working with things would make his hands swell. (R. at 282.)

Holbrook testified that he was an average student in high school, and he could no longer drive because he was too nervous. (R. at 282.) He testified that his daily activities involved watching television and walking his little dog. (R. at 282.) Holbrook said that his only social interaction with other people was when he went to his brother's house and also when his sister took care of him. (R. at 282.) Next, Holbrook testified that he quit his last job, which was a construction job that he had performed for 10 years. (R. at 282.)

Holbrook's attorney then began questioning him. (R. at 283.) In response to his attorney's question regarding the underlying cause of his pain, Holbrook said that arthritis was the principal cause of his pain. (R. at 283.) Holbrook testified that "every now and then, I hear voices in my head," and because of the voices he took powerful medications. (R. at 283.) Holbrook testified that the powerful medications caused him sleepiness, drowsiness and dizziness. (R. at 283.) He also testified that he took pain and anxiety medication. (R. at 283.) Holbrook said that the medication helped control the voices that he occasionally heard in his head. (R. at 284.)

Holbrook's attorney then asked him if he had Raynaud's disease[3], and Holbrook

---

[3]Raynaud's disease is a primary or idiopathic condition of intermittent bilateral attacks of ischemia of the fingers or toes and sometimes of the ears or nose marked by severe pallor, and often accompanied by paresthesia and pain. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's") 1276 (28th ed. 1994).

-5-

indicated that he did, and it affected all of his joints; he stated the disease caused stiffness in his joints, and it worsened during times of extreme temperature changes. (R. at 284.) He further testified that the Raynaud's disease was exacerbated by kneeling, crouching, crawling, bending and squatting. (R. at 285.)

Next, the attorney asked Holbrook about the arthritis in his ankles. (R. at 285.) Holbrook testified that his ankles bothered him frequently, and his ankles affected his ability to walk. (R. at 285.) He stated that his hobbies were watching football, walking the dog and playing with his nieces. (R. at 285.) Holbrook said he did not belong to any social clubs or groups. (R. at 285.) He also stated that his condition affected his ability to concentrate and stay focused on tasks. (R. at 285.)

Norman E. Hankins, vocational expert, was next called to testify. (R. at 286.) Hankins testified that Holbrook's previous employment as a construction laborer was classified as unskilled, requiring heavy exertion, and his employment as a brick mason was classified as skilled, requiring medium exertion. (R. at 286.) The ALJ then proceeded to ask Hankins a hypothetical question. (R. at 286.) Hankins answered the hypothetical question by stating that a man of Holbrook's height, weight, education and work background, the residual functional capacity for light[4] and medium work and a borderline intellectual range with an emotional disorder that limited him to work involving only things and not people would be capable of performing jobs such a janitor, cleaner, hand packer, stock clerk or assembler. (R. at

---

[4]Light work is work which does not entail lifting items weighing more than 20 pounds occasionally and more than 10 pounds frequently. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2005).

-6-

287.) Hankins said that these jobs existed in both the medium and light category. (R. at 287.) He further testified that there were approximately 70,000 of these jobs in Virginia and about 2.5 million nationally at the medium level. (R. at 287.) Also, he testified that there were 55,000 of these jobs in Virginia and about 2 million nationally at the light level. (R. at 287.) Hankins then testified that if Holbrook had a Global Assessment of Functioning, ("GAF"), score of 40 to 50[5], there would be no jobs that he could perform.

In rendering his decision, the ALJ reviewed records Dr. Ranjy C. Basa, M.D., of Stone Mountain Health Services, ("Stone Mountain"); Abingdon Radiology Services; Russell County Medical Center, ("RCMC"); Cumberland Mountain Community Services, ("CMCS"); B. Wayne Lanthorn, Ph.D., a state agency psychologist; R. J. Milan, Jr., Ph.D., a state agency psychologist; and Dr. Randall Hays, M.D., a state agency physician.

Holbrook was seen at Stone Mountain on April 13, 2000. (R. at 161.) He complained of ankle and foot pain, and he stated that he had been taking Advil for the pain with no improvement. (R. at 161.) Holbrook said that his ankles swelled and were stiff when he awoke in the morning. (R. at 161.) He was diagnosed with arthralgias of the ankles and prescribed Vioxx. (R. at 161.)

---

[5]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 41-50 indicates serious symptoms or serious impairments. DSM-IV at 32.

Case 1:05-cv-00035-GMW-PMS   Document 13   Filed 11/17/05   Page 7 of 21   Pageid#: 64

On April 18, 2000, Holbrook returned to Stone Mountain because of bilateral ankle swelling and associated pain, which he had experienced for the last week. (R. at 160.) It was noted in the record that Holbrook's family history was positive for rheumatoid arthritis. (R. at 160.) He was diagnosed with bilateral ankle pain and prescribed Vioxx. (R. at 160.)

R. J. Milan, Jr., Ph.D., a state agency psychologist, filled out a Psychiatric Review Technique form, ("PRTF"), on Holbrook on April 30, 2000. (R. at 198-210.) Milan determined that Holbrook suffered from a medically determinable impairment of a psychotic disorder. (R. at 200.) Milan concluded that Holbrook had the following functional limitations: mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties maintaining concentration, persistence or pace. (R. at 208.)

Holbrook was seen again at Stone Mountain for a regular follow-up appointment on May 2, 2000. (R. at 158.) He complained of pain and stiffness in both ankles, despite taking medication. (R. at 158.) An examination of his ankles showed no effusion, erythema or palpable deformities. (R. at 158.)

Holbrook returned to Stone Mountain for a follow-up regarding his ankle pain on May 16, 2000. (R. at 156.) He alleged that there was no improvement in his ankle pain, despite taking medication, since his last visit. (R. at 156.) He was diagnosed with chronic ankle pain and prescribed Celebrex and Darvocet. (R. at 156.)

Holbrook was seen at Abingdon Radiology Services on May 17, 2000. (R. at

165.) Two lateral radiographs of Holbrook's right foot and ankle were taken. (R. at 165.) No gross abnormality was noted, and there was no arthritic changes noted. (R. at 165.)

On June 14, 2000, Holbrook was seen at Stone Mountain for a follow-up visit. (R. at 154.) Since his last visit to Stone Mountain, he had been seen by a rheumatologist and was diagnosed with Raynaud's disease. (R. at 154.) It was noted that he was doing better with his ankle pain. (R. at 154.) Dr. Basa diagnosed Holbrook with Raynaud's disease and prescribed Celebrex, Darvocet and Xanax. (R. at 154.)

At his follow-up appointment at Stone Mountain on October 10, 2000, Holbrook was still complaining of intermittent ankle pain. (R. at 149.) He was diagnosed with chronic ankle pain and depression, and he was advised of the importance of ankle exercises. (R. at 149.)

Holbrook went to Stone Mountain on November 11, 2000, for a regular follow-up appointment. (R. at 147.) It was noted that his aunt, who accompanied him to the appointment, described him as not being as depressed, and she stated he had been getting out of the house more often. (R. at 147.) His exam was normal, and he was diagnosed with chronic joint pain and depression. (R. at 147.)

On December 15, 2000, Holbrook was seen at Stone Mountain for a regular follow-up appointment. (R. at 145.) It was noted that his depression was better since he was prescribed Paxil. (R. at 145.) Holbrook told Dr. Basa that he was getting out

of the house more frequently, and his ankles were not hurting. (R. at 145.) He was diagnosed with depression and chronic ankle pain. (R. at 145.)

At a follow-up appointment at Stone Mountain on March 15, 2001, Holbrook complained of intermittent joint pain in his ankles and in both hands. (R. at 143.) His depression was much better, and he was diagnosed with multiple joint pain and ankle pain. (R. at 143.)

On June 13, 2001, Holbrook was seen at Stone Mountain for a regular follow-up. (R. at 141.) It was noted that Holbrook's joint pain was much better, and he had been able to discontinue the use of Darvocet for his pain. (R. at 141.) Holbrook was diagnosed with multiple arthralgias and major depression. (R. at 141.)

Holbrook was seen on September 11, 2001, for a regular follow-up appointment at Stone Mountain. (R. at 139.) He complained of intermittent left knee pain, and it was noted in the record that his depression was better since he had started taking Paxil. (R. at 139.) An exam on his knee was performed, and there was no evidence of acute effusion; he had a full range of motion, and there was no evidence of edema. (R. at 139.) He was diagnosed with chronic knee pain and major depression. (R. at 139.)

On December 10, 2001, Holbrook was seen at Stone Mountain for a regular follow-up. (R. at 137.) He complained of intermittent pain in his knee and ankle joints bilaterally. (R. at 137.) It was noted that he had previously been seen by a rheumatologist who did not find any specific problem causing his chronic ankle pain.

(R. at 137.) Also, according to his aunt, Holbrook's depression was better. (R. at 137.) He was diagnosed with chronic ankle pain and depression which was improving. (R. at 137.)

Holbrook was seen at CMCS, on July 25, 2002. (R. at 186.) The crisis services report indicated that Holbrook stated that he had been hearing voices, which told him that he was about to get married. (R. at 186.) Apparently, he heard his grandmother's voice who told him that he was getting married in order to please the family. (R. at 186.) He was diagnosed with delusions and a psychotic disorder not otherwise specified, schizophrenia, generalized anxiety, Raynaud's disease and problems related to his environment. (R. at 186-87, 189.)

Holbrook was taken to Stone Mountain by his aunt on July 26, 2002. (R. at 135.) He had been experiencing auditory hallucinations for the previous two days. (R. at 135.) Apparently, Holbrook had heard a voice tell him he was going to get married. (R. at 135.) Believing the information the voices relayed, Holbrook put on a suit and informed others that he was about to get married. (R. at 135.) He also complained of hearing other strange noises. (R. at 135.) An appointment was made with a psychiatrist; he was prescribed Xanax and Zyprexa. (R. at 135.) He was diagnosed with auditory hallucinations, which might be secondary to schizophrenia, anxiety, polydisia, malaise and fatigue. (R. at 135.)

After being involved in an automobile accident on August 4, 2002, Holbrook had a x-ray taken of his cervical spine and chest at RCMC. (R. at 180.) The x-ray of his cervical spine revealed normal vertebral body heights and disc spaces. (R. at

180.) The retropharyngeal and retrotracheal space was normal with no anterior displacement of the air shadow, and the articulation on the C1 and C2 was normal. (R. at 180.) The diagnosis regarding Holbrook's spine was that he had a normal cervical spine. (R. at 180.) The x-ray of Holbrook's chest revealed that his lungs were well-expanded and free of active or acute disease. (R. at 180.) There was no evidence of a pneumothorax and no evidence of a pulmonary contusion, and the heart mediastinal structures were normal. (R. at 180.) The findings from the chest x-ray showed no active or acute cardiopulmonary process and no evidence of acute chest trauma. (R. at 180.)

On August 26, 2002, Holbrook was seen at Stone Mountain for a regular follow-up. (R. at 133.) Holbrook reported that his sleeping was better, but he complained of a sore right shoulder caused by the car accident. (R. at 133.) Holbrook was diagnosed with auditory hallucinations, anxiety and chronic bilateral ankle pain. (R. at 133.) He was prescribed Zyprexa for his sleep difficulties, Xanax for his anxiety and Celebrex for his ankle pain. (R. at 133.)

Holbrook was seen at Stone Mountain on October 25, 2002, and he complained of a sore throat, nasal congestion and a runny nose. (R. at 131.) It was noted that he had auditory hallucinations, possibly secondary to schizophrenia, anxiety and chronic ankle pain. (R. at 131.)

B. Wayne Lanthorn, Ph.D., psychologist, performed a mental status evaluation on Holbrook on May 6, 2003, at the request of the Virginia Department of Rehabilitative Services. (R. at 192.) Lanthorn concluded that Holbrook suffered

Case 1:05-cv-00035-GMW-PMS   Document 13   Filed 11/17/05   Page 12 of 21   Pageid#: 69

from a generalized anxiety disorder, that was mild, borderline intellectual functioning and a GAF score of 50-55[6]. (R. at 195-96.) Lanthorn further concluded that Holbrook was competent to manage his own funds, and he had moderate to mild limitations in his overall adaptability skills. (R. at 196.)

Milan, a state agency psychologist, completed a Mental Residual Functional Capacity Assessment on Holbrook on May 15, 2003. (R. at 213-15.) Milan found Holbrook to be moderately limited in his ability to understand and remember detailed instructions, to carry out detailed job instructions, to maintain attention and concentration for extended periods and to perform activities within a schedule, to maintain regular attendance and to be punctual within customary tolerances. (R. at 213.) Milan believed that Holbrook exhibited features of a psychotic disorder that was well-managed when treated. (R. at 215.) Also, Milan determined Holbrook was in the borderline range of intellect, his mental allegations were partially credible and he was able to understand, remember and carry out simple work tasks under ordinary supervision, with no more than occasional disruptions to his concentration and persistence at work routines. (R. at 215.) Milan concluded that Holbrook could interact appropriately with others and adapt self-sufficiently in a work environment, all while sustaining work activities on a regular basis. (R. at 215.)

Dr. Randall Hays, M.D., a state agency physician, filled out a Residual Physical Functional Capacity Assessment on May 16, 2003. (R. at 216-22.) Dr. Hays's primary diagnosis of Holbrook was that Holbrook had a disorder of the spine. (R. at

---

[6]A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning. DSM-IV at 32.

-13-

216.) Dr. Hays determined that Holbrook had the following exertional limitations: occasionally lift and/or carry (including upward pulling) items weighting up to 50 pounds maximum; frequently lift and/or carry (including upward pulling) items weighting 25 pounds; stand and/or work (with normal breaks) for a total of six hours in an eight-hour workday; sit (with normal breaks) for a total of six hours in an eight-hour workday; and push and/or pull (including operation of hand and/or foot controls) for an unlimited duration other than as shown for lift and/or carry. (R. at 217.) Dr. Hays further found that Holbrook could never climb a ladder, rope or scaffolds, but he could occasionally kneel, crouch and crawl. (R. at 218.) Dr. Hays also determined that Holbrook's allegations were not fully credible due to the fact that Holbrook reported taking walks, preparing lunch, shopping, cleaning his room and putting away laundry and dishes. (R. at 221.)

On June 9, 2003, Holbrook visited Stone Mountain for his regular follow-up appointment. (R. at 127.) He stated that he was doing much better with his anxiety and sleeplessness since he started taking Zyprexa. (R. at 127.) However, Holbrook still complained of joint pains, lower back pain and knee pain and pain in his fingers. (R. at 127.) Holbrook was diagnosed with auditory hallucinations possibly secondary to chronic schizophrenia, multiple chronic joint pains and anxiety. (R. at 127.)

Holbrook was again seen for a regular follow-up appointment at Stone Mountain on October 21, 2003. (R. at 225.) There were no changes noted from previous visits, and he reported that Zyprexa was helping his anxiety and sleep problems. (R. at 225.) He was diagnosed with auditory hallucinations, secondary to psychosis, and multiple joint aches. (R. at 225.) He was prescribed Zyprexa,

-14-

Celebrex and Darvocet. (R. at 225.)

Holbrook was seen at Stone Mountain for his regular follow-up on April 30, 2004. (R. at 241.) Holbrook reported that he had been sleeping better since taking Zyprexa. (R. at 241.) He was diagnosed with hypothyroidism, chronic arthralgia in his hands, knees and ankles, and auditory hallucinations currently asymptomatic. (R. at 241.) Holbrook was given prescriptions for Celebrex and Zyprexa. (R. at 241.)

On December 14, 2004, Teresa Mullins, counselor/case manager, filled out a Medical Source Statement Of Ability To Do Work-Related Activities (Mental). (R. at 228-29.) Mullins determined that Holbrook's ability to understand, to remember and carry out instructions was affected by his impairment. (R. at 228.) Mullins concluded that Holbrook was moderately affected in his ability to understand and remember short simple instructions, to carry out short simple instructions and to make judgments on simple work-related decisions. (R. at 228.) She found Holbrook to be markedly impaired in understanding and in remembering detailed job instructions and carrying out detailed instructions. (R. at 228.) Mullins found that Holbrook's ability to interact appropriately with supervisors and with co-workers was moderately affected. (R. at 229.) She determined his ability to appropriately interact with the public, to respond appropriately to work pressures in usual work settings and to respond appropriately to changes in a routine was markedly affected by his impairments. (R. at 229.) Mullins cited Holbrook's poor coping and social skills and his inability to handle change as evidence that supported her assessment. (R. at 229.)

-15-

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy the burden, the Commissioner must then establish that the claimant maintains the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2005); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated, February 7, 2005, the ALJ found that Holbrook met the disability insured status requirements of the Act and was insured for DIB purposes

through the date of the decision. (R. at 19.) The ALJ concluded that Holbrook had not engaged in substantial gainful activity since the alleged onset of his disability. (R. at 19.) The ALJ found that Holbrook suffered from severe impairments, borderline intellect and chronic arthralgias, but the ALJ found that his impairments did not meet or medically equal one of the listed impairments found at 20 C.F.R. Part 404, Subpart P. (R. at 19.) The ALJ found that Holbrook's allegations regarding his limitations were not totally credible and that he retained the residual functional capacity to perform work at the medium level of physical exertion with an intellectual endowment in the borderline range. (R. at 19.) The ALJ further determined that Holbrook was limited to activities that did not involve interaction with the public. (R. at 19.) The ALJ found that Holbrook could not perform his past relevant work. (R. at 19.) Based on Holbrook's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy which Holbrook could perform. (R. at 19-20.) Therefore, the ALJ concluded that Holbrook was not under a "disability" as defined by the Act at any time through the date of the decision. (R. at 20.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005).

Holbrook argues that the ALJ's decision is not supported by substantial evidence. Specifically, Holbrook argues that the ALJ's opinion did not provide an accurate statement of Holbrook's impairments because the ALJ stated in the body of his opinion that Holbrook suffered from a severe anxiety disorder but did not list an anxiety disorder in his findings of severe impairments. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 13.) Holbrook further argues that the ALJ erred in determining Holbrook's residual functional capacity because,

Case 1:05-cv-00035-GMW-PMS   Document 13   Filed 11/17/05   Page 17 of 21   Pageid#: 74

again, the ALJ noted in the body of his opinion that Holbrook was limited by moderate difficulties in maintaining concentration, persistence and pace but failed to restate this limitation in the findings section at the end of his written opinion. (Plaintiff's Brief at 13.) Finally, Holbrook argues that the ALJ erred by finding that the anxiety, which Holbrook suffered from, was not a severe impairment. (Plaintiff's Brief at 15.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings and whether the findings were reached through application of the correct legal standards. *See Coffman,* 829 F.2d at 577.

Holbrook argues that the ALJ's opinion did not provide an accurate statement of his impairments because the ALJ stated in the body of the opinion that Holbrook suffered from a severe anxiety disorder but did not list an anxiety disorder in his findings of severe impairments. (Plaintiff's Brief at 13.) Although this allegation is true, the ALJ oversight is simply a harmless error that does not merit a reversal.

Not every ALJ error is reversible error. If substantial evidence supports the ALJ's determination, then the ALJ's decision will be affirmed. *See Consolidation Coal Co. v. Held,* 314 F.3d 184, 189-90 (4th Cir. 2002) (citing *Jericol Mining, Inc. v. Napier,* 301 F.3d 703 (6th Cir. 2002); *Underwood v. Elkay Mining Inc.,* 105 F.3d 946, 949-50 (4th Cir. 1997)). While it is true that the ALJ did not specifically cite severe anxiety in his findings, it is obvious that the ALJ credited Holbrook with a severe anxiety impairment when he determined Holbrook's residual functional

capacity. The ALJ limited Holbrook to working with things instead of people when he determined Holbrook's residual functional capacity. (R. at 17-18.) Clearly this limitation was due to the ALJ's consideration of the effect that Holbrook's severe anxiety would have on his ability to work and deal with the public. Therefore, substantial evidence exists to support the ALJ's finding and this harmless error does not merit a reversal.

Holbrook next argues that the ALJ erred in determining his residual functional capacity, because again the ALJ noted in the body of his opinion that Holbrook was limited by moderate difficulties in maintaining concentration, persistence and pace, but the ALJ failed to restate this limitation in the findings section at the end of his written opinion. (Plaintiff's Brief at 13.) A review of the ALJ's decision shows that he did find that Holbrook was limited by moderate difficulties in maintaining concentration, persistence and pace. (R. at 16.) The record also reveals that the ALJ did not include this finding in the hypothetical presented to the vocational expert.

Testimony of a vocational expert constitutes substantial evidence for purposes of judicial review where his or her opinion is based upon a consideration of all the evidence of record and is in response to a proper hypothetical question which fairly sets out all of a claimant's impairments. *See Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989.) The determination of whether a hypothetical question fairly sets out all of a claimant's impairments turns on two issues: 1) is the ALJ's finding as to the claimant's residual functional capacity supported by substantial evidence; and 2) does the hypothetical adequately set forth the residual functional capacity as found by the ALJ?

-19-

The ALJ's hypothetical question posed to the vocational expert in this case did not adequately set forth the residual functional capacity as found by the ALJ. At the hearing on December 4, 2004, the ALJ asked the vocational expert, Hankins, the following hypothetical question:

> . . . [A]ssum[ing] a man of Claimant's height, weight, education and work background . . . that he has the residual functional capacity for light and medium work activities . . . that he has the intellectual endowment in the borderline range and, finally, . . . that he has an emotional disorder with no significant restrictions regarding his ability to perform work-related activities except that he's limited to activities dealing with things rather than dealing with the public, are there any jobs that exist in the region and the national economy which this person could perform?

(R. at 287.) The ALJ failed to include in this hypothetical that Holbrook is further limited by moderate difficulties in maintaining concentration, persistence and pace, which is a finding regarding Holbrook that the ALJ made in his written opinion. (R. at 16.) Thus, the testimony by the vocational expert that the ALJ relied on is erroneous and incomplete because it does not include the additional limitation of moderate difficulties in maintaining concentration, persistence and pace. Therefore, the hypothetical question did not fairly set out all of Holbrook's impairments because the question did not adequately set forth the residual functional capacity as determined by the ALJ. For this reason this case will be remanded back to the Commissioner.

Finally, Holbrook argues that the ALJ erred by finding that the anxiety, which Holbrook suffered from, was not a severe impairment. (Plaintiff's Brief at 15.) As

previously stated in the body of this opinion, it is clear from the ALJ's opinion that he did indeed find that Holbrook suffered from a severe anxiety impairment; otherwise, the ALJ would not have limited Holbrook to work that involved working with things rather than people. (R. at 17-18.) Therefore, the court rejects this argument.

## V. Conclusion

Based on the above, the defendant's motion for summary judgment will be overruled, the Commissioner's decision denying benefits will be vacated, and Holbrook's claims for benefits will be remanded to the Commissioner for further consideration in accordance with this memorandum opinion.

An appropriate order will be entered.

DATED: This _16th_ day of November, 2005.

Glenn M. Williams

SENIOR UNITED STATES DISTRICT JUDGE